UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SANTIAGO GOMEZ,                                    :
                          Plaintiff,               :
                                                   :
v.                                                 :
                                                   :
WESTCHESTER COUNTY; FRANCIS                        :
DELGROSSO, Warden; MARTINEZ, Sergeant;             :          **OPINION AND ORDER**
HOGUE, Sergeant; LA FONDA SPAULDING,               :
Warden; CHRISTOPHER ROBERTS, Captain;              :          19 CV 1335 (VB)
JOSEPH K. SPANO, Commissioner; LEANDRO             :
DIAZ, Deputy Commissioner; CORRECT CARE            :
SOLUTIONS, LLC; ALEXIS GENDELL, M.D.;              :
CHESTNUT, Correctional Officer; LUIS,              :
Correctional Officer; and GRANT, Correctional      :
Officer;                                           :
                          Defendants.              :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Santiago Gomez, proceeding pro se and in forma pauperis, brings claims against

(i) the "County Defendants," who consist of Westchester County (the "County"), and individuals

Warden Francis DelGrosso, Warden La Fonda Spaulding, Sergeant ("Sgt.") Martinez, Sgt.

Hogue, Captain ("Capt.") Christopher Roberts, Correctional Officer ("C.O.") Chestnut, C.O.

Luis, C.O. Grant, Commissioner ("Comm'r") Joseph K. Spano, Deputy ("Dep.") Comm'r

Leandro Diaz; and (ii) the "CCS Defendants," who consist of Correct Care Solutions, LLC

("CCS"), and M.D. Alexis Gendell, and to the extent plaintiff asserts medical claims, the

County.[1]

        The complaint sets forth myriad claims against defendants under the First, Fourth, Fifth,

Eighth, and Fourteenth Amendments, and the Americans with Disabilities Act ("ADA").

_____

[1]     Plaintiff originally named law librarian Kaseithia M. Hewitt in the complaint. However,
the Court dismissed plaintiff's claim against Hewitt and accordingly, Hewitt has been terminated
from the case.  (Doc. #6).

1

Plaintiff's Section 1983 claims include:  (i) a <u>Monell</u> claim against the County and CCS for unlawful policies or customs; (ii) a First Amendment retaliation claim against Warden DelGrosso, Sgt. Hogue, Sgt. Martinez, C.O. Chestnut, C.O. Grant, and C.O. Luis; (iii) an equal protection claim for conditions of confinement against Comm'r Spano, Warden DelGrosso, Dep. Comm'r Diaz, Capt. Roberts, Warden Spaulding, and Martinez;[2] (iv) a due process claim for conditions of confinement against Comm'r Spano, Warden DelGrosso, Dep. Comm'r Diaz, Capt. Roberts, Warden Spaulding, and Sgt. Martinez; (v) a due process claim for wrongful confinement against the County, Comm'r Spano, Warden DelGrosso, Dep. Comm'r Diaz, Capt. Roberts, Warden Spaulding, and Sgt. Martinez; (vi) a claim for deliberate indifference to serious medical needs against the County, CCS, Comm'r Spano, Dep. Comm'r Diaz, Warden DelGrosso, and M.D. Gendell; (vii) a cruel and unusual confinement claim against the County, Comm'r Spano, Warden DelGrosso, Capt. Roberts, Sgt. Martinez, and Warden Spaulding; and (viii) a conspiracy claim against M.D. Gendell, Capt. Roberts, Warden Spaulding, Warden DelGrosso, Sgt. Hogue, and Sgt. Martinez.  Plaintiff also brings an ADA claim against the County and CCS.

Now pending are the CCS Defendants and the County Defendants' motions to dismiss pursuant to Rule 12(b)(6).  (Docs. ##25, 34).

For the following reasons, the CCS Defendants' motion is GRANTED.  The County Defendants' motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[2]     Plaintiff also brings claim under Section 1985, which the Court addresses herein.

## BACKGROUND

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.     <u>Plaintiff's Incarceration, Medical Care, and Housing Transfer</u>

Beginning in April 2018, plaintiff was in the custody of the Westchester County Department of Corrections ("WCDOC") at Westchester County Jail ("WCJ").[3]

Upon arriving at WCJ, plaintiff had fractures to his left ankle and also the right fourth metacarpal; plaintiff's ankle fracture required use of a wheelchair. Plaintiff was initially housed in the WCJ infirmary.

Approximately two weeks after entering WCDOC custody, medical personnel at Westchester Medical Center ("WMC") changed plaintiff's status to weight-bearing as tolerated, even though "his left ankle was still fractured and in its healing stages." (Doc. #2 ("Compl.") at ECF 19).[4] Plaintiff acknowledges he still had access to, and used, a wheelchair during this time.

On June 12, 2018, plaintiff alleges he filed a grievance asserting WCDOC was not in compliance with the ADA because the visiting rooms were not equipped with areas to search handicapped prisoners. According to plaintiff, Capt. Roberts, M.D. Gendell, and Warden Spaulding filed false reports in response to plaintiff's grievance, claiming plaintiff was not handicapped.

---

[3]     The parties dispute the circumstances of plaintiff's confinement. Plaintiff alleges he was "a Pretrial detainee during the relevant times" (Doc. #41 ("Pl. Opp. County Defs.") at 1), whereas the County Defendants insist his detention was "pursuant to a parole warrant." (Doc. #36 ("County Defs. Mem.") at 2).

[4]     "Compl. at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system, which will be used herein.

On July 20, 2018, plaintiff alleges he was discharged from the infirmary with crutches and a "no stairs" medical order, and assigned "to the Pen., specifically to A-Block despite his obvious need for continued aftercare." (Compl. at ECF 20). Plaintiff claims he was discharged from the infirmary despite experiencing ankle pain and blames Gendell and Roberts for his discharge. Specifically, he alleges Gendell and Roberts "conspired to create the illusion plaintiff was not handicap[ped] to disrupt his ADA claims." (Compl. at ECF 19).

On August 14, 2018, plaintiff underwent surgery to his fourth metacarpal, and his right hand was placed in a cast. Plaintiff alleges as a result of his surgery, he "required assistance when dressing, undressing, showering, brushing his teeth." (Compl. at ECF 18). Plaintiff claims he was not provided any form of assistance after the surgery, but instead returned to WCJ general population housing. Plaintiff alleges he did not receive Percocet due to "a Policy/custom that they do not provide any inmates of WCDOC with narcotic medications." (Compl. at ECF 23). Plaintiff claims CCS instead, provided Tylenol, which was not effective in treating his pain.

According to plaintiff, when he was told he would be transferred he informed the non-party officer he had a no stairs order and that officer then complained to Sgt. Martinez that "[p]laintiff was refusing to transfer." (Compl. at ECF 23). Plaintiff claims Martinez insisted plaintiff did not have a no stairs order. During this incident with Martinez, plaintiff alleges Martinez told him Warden DelGrosso had directed non-party Sgt. Meade to transfer plaintiff and insisted Sgt. Hogue take other retaliatory action for plaintiff's grievances and lawsuit. As a result of this incident, plaintiff alleges Martinez ordered the non-party officer to file a false discipline report.

On August 27, 2018, plaintiff was transferred to a housing unit in the old jail under "keep lock" status. (Compl. at ECF 24). Plaintiff makes numerous allegations in his complaint

concerning the facilities in the old jail. Specifically, plaintiff alleges: (i) his new cell was "covered in fecal matter, . . . with a strong urine odor" (Compl. at ECF 25); (ii) the housing unit "air was stagnant," "the heat was unbearable," the "paint on the walls and floor wax was bubbling and peeling," and "the flooring was broken, and missing portions" (id. at ECF 25–26); (iii) the showers in his housing unit were approximately three feet above ground and lacked floor mats, and therefore slippery, causing plaintiff to fall and hurt himself; and (iv) the day room in the old jail lacked facilities such as an "exercise machine with a pull up-Dip-and push up station" and a bathroom, causing inmates to "hold their bowels for up to 1-2 hours" and "urinate in the day room garbage." (Id. at ECF 28–29).

Plaintiff claims as a result of his cell conditions, "he began experiencing difficulty breathing which developed into an asthma attack," causing him to fall on the "broken/cracked flooring," cracking "his cast" and "causing severe pain." (Compl. at ECF 26). Subsequent to this incident, plaintiff was taken to WMC, given a new cast, and pain medication. Thereafter, plaintiff filed a grievance regarding the conditions in the housing unit and his cell.

Plaintiff claims defendants treated the conditions of the old jail "as [a] form of punitive housing" and "fabricated reports in [an] effort to minimize the magnitude of the aforesaid conditions when answering grievances." (Compl. at ECF 30).

## II. Law Library Position and Termination

Around the time of plaintiff's housing transfer, plaintiff accepted a position in the prison law library as a clerk. Plaintiff alleges he soon noticed "the law library was inadequate and missing constitutionally mandated supplies," and accordingly, he "filed numerous complaints." (Compl. at ECF 20). However, according to plaintiff, non-party Hewitt and Warden DelGrosso

"both filed misleading statements alleging that the missing materials were ordered and being shipped." (Id.).

Soon thereafter, plaintiff was terminated from his position in the law library. Plaintiff alleges Sgt. Martinez told him Warden DelGrosso instructed Sgt. Hogue to fire plaintiff from the job in the law library in retaliation for plaintiff filing grievances and the lawsuit. Plaintiff claims defendants "conspired to fire [him] from his job" in a form of retaliation. (Compl. at ECF 20). Further, plaintiff alleges that following his termination from the position in the law library, he was denied access to legal materials otherwise available to pro se inmates.

III.    Plaintiff's Grievances and Lawsuit

Plaintiff identified numerous grievances he filed concerning the medical care he received in the infirmary, the infirmary conditions, his housing transfer, his housing conditions, the supplies in the law library, fabricated disciplinary reports, and his interactions with the individual defendants.

And in January 2018—more than a year before plaintiff commenced the instant action—plaintiff filed a separate lawsuit in this district, Gomez v. Westchester County, 18 Civ. 244 (NSR) (S.D.N.Y.) ("Gomez I") challenging the conditions of confinement. In Gomez I, plaintiff asserts claims respecting the quality and handling of food at WCJ. He also claims some of the named defendants retaliated against him for his grievances respecting the quality of food and failed to provide proper medical care, including the use of a wheelchair.

In the instant action, plaintiff alleges he filed an amended complaint in Gomez I to add additional facts and claims against Warden DelGrosso, Capt. Roberts, Dep. Comm'r Diaz, and Warden Spaulding.

**DISCUSSION**

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).[5] First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to

raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules

permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights

---

[5]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.[6]

## II. Abandoned Claims

The CCS Defendants argue plaintiff's failure to oppose certain claims in the motion to dismiss amounts to abandonment of those claims.

The Court disagrees.

"Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." Robinson v. Fischer, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010).[7] "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (collecting cases). "Application of this proposition is, however, tempered by this Court's discretion." Id.

In light of plaintiff's pro se status, and reading plaintiff's submission liberally, it is clear plaintiff is seeking to "combat [the] medical defendants' entire motion to dismiss," as he

---

[6]   The Court notes that plaintiff is a particularly sophisticated pro se litigant, having filed at least 10 prior pro se actions in this Court. See Tracy v. Freshwater, 623 F.3d 90, 103 (2d Cir. 2010) ("[A] pro se litigant's experience with and knowledge of both the legal system in general and the particular procedural context at issue are certainly factors that a court should consider when determining the degree of solicitude to afford that litigant.").

[7]   Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

explains: "for the sake of brevity, Plaintiff opposes each and every and point raised in the medical defendant's [sic] motion to dismiss." (Doc. #28 ("Pl. Opp. CCS Defs." at ECF 1, 3).[8]

Accordingly, the Court will not deem abandoned plaintiff's claims against the CCS Defendants.

III.    First Amendment Retaliation Claim

Plaintiff asserts a First Amendment retaliation claim against Warden DelGrosso, Sgt. Hogue, Sgt. Martinez, C.O. Chestnut, C.O. Grant, and C.O. Luis. He alleges these defendants retaliated against him for filing grievances and adding claims against the individual defendants to his prior lawsuit.

Defendants argue plaintiff fails to allege his transfer to the old jail or his law library employment termination are sufficient to establish retaliation that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.

The Court agrees except as to plaintiff's claim against Warden DelGrosso, Sgt. Hogue, and Sgt. Martinez.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege: (i) he engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against him; and (iii) the protected speech and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295. Accordingly, a

---

[8]    "Pl. Opp. CCS Defs. at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system, which will be used herein.

prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id.

With respect to the first element, "the filing of prison grievances is a constitutionally protected activity." Davis v. Goord, 320 F.3d 346, 352–53 (2d Cir. 2003). With respect to the second element, while prison officials have broad discretion to transfer a pretrial detainee, see Montanye v. Haymes, 427 U.S. 236, 243 (1976), it is well settled that a transfer may not be made solely in retaliation for the exercise of constitutionally protected rights. Meriwether v. Coughlin, 879 F.2d 1037, 1047 (2d Cir. 1989). However, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d at 353. "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." Id. In making this determination, the inquiry must be "tailored to the different circumstances in which retaliation claims arise," bearing in mind that "[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." Id. Finally, plaintiff must allege a causal connection between the protected speech and the adverse action. Dolan v. Connolly, 794 F.3d at 294.

Plaintiff satisfies the first prong of the First Amendment retaliation analysis. He alleges he was transferred to the old jail facility—which plaintiff claims is the worst facility at the WCJ—and fired from his position as a clerk in the law library in retaliation for filing grievances and naming prison officials in a lawsuit.

Turning to the second prong, plaintiff has alleged sufficient facts suggesting a similarly situated individual of ordinary firmness would view the transfer from the infirmary to the old jail

and the termination from a position in the law library as a deterrent to filing grievances or lawsuits.

Finally, at this stage in the proceedings, plaintiff has satisfied the third prong by pleading causation between the grievances and lawsuit, and the adverse action. Plaintiff alleges Sgt. Martinez told plaintiff that Warden DelGrosso directed non-party Sgt. Meade to transfer plaintiff from the infirmary to the old jail and directed Sgt. Hogue to fire plaintiff from his job as a clerk in the law library. He claims Martinez told him: "This is happening because you recently filed a lawsuit against him; that's why he's moving you." (Compl. at ECF 24).

Accordingly, plaintiff has alleged a First Amendment retaliation claim against DelGrosso, Martinez, and Hogue.

However, plaintiff has not alleged adequately a retaliation claim against C.O. Chestnut, C.O. Luis, and Dep. Comm'r Diaz. To adequately plead a Section 1983 claim for retaliation, plaintiff must allege a defendant's personal involvement in an alleged deprivation of plaintiff's constitutional rights. See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013). In other words, plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.

A plaintiff may satisfy the personal involvement requirement by alleging one of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[9]  Section 1983 liability cannot be predicated

on a theory of respondeat superior.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Here, plaintiff's complaint lacks factual allegations that would establish defendants C.O.

Chestnut, C.O. Grant, and C.O. Luis engaged in retaliatory conduct.  Although plaintiff alleges

C.O. Chestnut searched his cell and filed a false disciplinary report claiming plaintiff had ripped

open his prison mattresses, that claim lacks any allegations that Chestnut's actions were in

retaliation for plaintiff's grievances or the lawsuit.

Accordingly, plaintiff's First Amendment retaliation claim against C.O. Chestnut, C.O.

Grant, and C.O. Luis is dismissed.  Plaintiff's First Amendment retaliation claim against Warden

DelGrosso, Sgt. Hogue, and Sgt. Martinez may proceed.

IV.     Equal Protection Claim for Conditions of Confinement

Plaintiff fails to sufficiently allege an equal protection claim respecting the conditions of

his confinement.

 "The equal protection clause directs state actors to treat similarly situated people alike."

Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  "Where, as here, Plaintiff does not

claim to be a member of a protected class, he may bring an equal protection claim under one of

two theories: selective enforcement or class of one."  Rankel v. Town of Somers, 999 F. Supp. 2d

527, 544 (S.D.N.Y. 2014).

To allege a selective-enforcement claim, "a plaintiff must plead:  (1) he was 'treated

differently from other similarly situated' individuals and (2) 'that such differential treatment was

---

[9]      After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether
claims alleging personal involvement under the second, fourth, and fifth of these factors remain
viable.  See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016),
reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016).
The Second Circuit has yet to resolve this dispute.  Id.

based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" <u>Rankel v. Town of Somers</u>, 999 F. Supp. 2d at 544 (citing <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 790 (2d Cir. 2007)).

To state "a class-of-one theory, a plaintiff must allege that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" <u>Rankel v. Town of Somers</u>, 999 F. Supp. 2d at 544 (citing <u>Analytical Diagnostic Labs, Inc. v. Kusel</u>, 626 F.3d 135, 140 (2d Cir. 2010)). "A plaintiff must plead 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" <u>Id</u>. (citing <u>Ruston v. Town Bd. for Town of Skaneateles</u>, 610 F.3d 55, 59 (2d Cir. 2010)).

Here, plaintiff does not allege he is a member of a protected class. Nor does plaintiff allege defendants treated plaintiff differently than similarly situated individuals because he filed grievances and a lawsuit. Thus, plaintiff fails to allege an equal protection claim.

Accordingly, plaintiff's equal protection claim must be dismissed.

V.    <u>Due Process Claims</u>

To the extent plaintiff asserts a due process claim disputing the conditions of confinement and the propriety of his confinement—those claims fail because plaintiff does not adequately allege he was deprived due process.

To establish a violation of due process rights, a plaintiff must show: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." <u>Giano v. Selsky</u>, 238 F.3d 223, 225 (2d Cir. 2001). "A prisoner's liberty interest is implicated by prison discipline, . . . only if the discipline imposes [an] atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004).

WCDOC enjoys "broad leeway in deciding where to house the inmates under its protective care." McFadden v. Solfaro, 1998 WL 199923, at *10 (S.D.N.Y. Apr. 23, 1998). "[T]he law is clear that an inmate does not have a right to be confined to the prison of his own choosing or to a particular type of housing." White v. Williams, 2013 LEXIS 189733, *26 (N.D.N.Y. Sept. 11, 2013). "And where prison authorities have unfettered discretion to transfer prisoners from one institution to another, a prisoner's interest in avoiding transfer to an institution affording less favorable living conditions is insufficient to qualify for due process protection." Pugliese v. Nelson, 617 F.2d 916, 922 (2d Cir. 1980).

Moreover, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). But "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).

Here, to the extent plaintiff takes issue with his housing assignment or confinement, it is well settled that inmates in the custody of WCDOC are not entitled to a cell of their own choosing, and WCDOC is afforded deference in determining how to house inmates. Indeed, most pages of plaintiff's complaint are devoted to arguing the conditions in the old jail violate his constitutional rights because it is not as nice as the other facilities at the WCJ. That is insufficient to state a constitutional claim for a due process violation. See Pugliese v. Nelson,

617 F.2d at 922. And to the extent plaintiff is claiming he lacked procedural safeguards in his housing assignment, the complaint does not contain allegations suggesting any disciplinary action. See Boddie v. Schnieder, 105 F.3d at 862. Finally, to the extent plaintiff claims his termination from the library position constituted a denial of due process, that claim does not implicate a protected liberty interest. See Frazier v. Coughlin, 81 F.3d 313, 318 (2d Cir. 1996) ("[I]n New York a prisoner has no protected liberty interest in a particular job assignment.").

With respect to the named defendants, plaintiff does not allege M.D. Gendell had control over his confinement, but rather argues Gendell was involved in the decision to discharge plaintiff from the infirmary. That may be. However, plaintiff has not asserted—nor can he— that he was entitled to due process on his discharge from the infirmary. Bourgeois v. Hongisto, 488 F. Supp. 304, 306 (S.D.N.Y. 1980) ("It is within the realm of possibility, albeit improbable, that plaintiff should have been admitted to the infirmary initially and, after his eventual admission, was prematurely discharged. Such conduct, however, would amount to nothing more than medical malpractice."). Moreover, it is WCDOC, not Gendell, that controls decisions respecting inmate housing. See McFadden v. Solfaro, 1998 WL 199923, at *10.

With respect to Spano, DelGrosso, and Diaz, because plaintiff does not have a liberty interest in his housing assignment, Cooper v. City of New York, 2014 WL 5315074, at *4 (S.D.N.Y. Oct. 17, 2014), he fails to allege facts suggesting an actionable due process claim regarding his transfer to the old jail.

Accordingly, plaintiff's due process claim regarding his confinement must be dismissed.

VI.    Deliberate Indifference Claims

As an initial matter, it is unclear from plaintiff's complaint whether he was a pretrial detainee or a convicted prisoner, and therefore whether to analyze plaintiff's deliberate

indifference claims under the Eighth or Fourteenth Amendment.  See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  "This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment."  Reinoso-Delacruz v. Ruggerio, 2019 WL 2062434, at *2–3 (D. Conn. May 9, 2019).  Nonetheless, some courts have held alleged probation violators are akin to pretrial detainees and thus analyzed their claims under the Due Process Clause of the Fourteenth Amendment.  See id. (treating as a pretrial detainee a plaintiff who "was not found guilty of violating his probation until after" the alleged assault at issue in the case).

Plaintiff argues he was a pretrial detainee during the relevant times, but the CCS Defendants and County Defendants assert plaintiff was an alleged parole violator during the relevant time period.  Nevertheless, the CCS Defendants apply the more lenient standard for pretrial detainees.  Accordingly, the Court does the same here.

Deliberate indifference claims brought by pretrial detainees are analyzed under the Fourteenth Amendment, rather than the Eighth Amendment, because "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'"  Darnell v. Pineiro, 849 F.3d at 29 (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007)).  To state a deliberate indifference claim, plaintiff's allegations must satisfy two prongs:  an objective prong and a mens rea prong.  Id.  Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions."  Id.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "'either alone or in combination, pose[d] an unreasonable risk of serious damage to his health.'"  Darnell v. Pineiro, 849 F.3d at 30 (quoting Walker v. Schult, 717 F.3d 119, 125 (2d

Cir. 2013)).  "There is no 'static test' to determine whether a deprivation is sufficiently serious;

instead, 'the conditions themselves must be evaluated in light of contemporary standards of

decency.'"  Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)).

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the

defendant-official acted intentionally . . . , or recklessly failed to act with reasonable care to

mitigate the risk that the condition posed . . . even though the defendant-official knew, or should

have known," of the risk.  Darnell v. Pineiro, 849 F.3d at 35.  The Fourteenth Amendment's

mens rea prong "is defined objectively" and "can be violated when an official does not have

subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to

a substantial risk of harm."  Id.

A.      Serious Medical Needs

Defendants argue plaintiff's deliberate indifference to serious medical needs claim fails

because plaintiff fails to allege objectively serious medical needs.

The Court agrees.

With respect to the objective prong, in the context of medical care, two inquiries

determine whether a deprivation is objectively serious.  "The first inquiry is whether the prisoner

was actually deprived of adequate medical care."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d

Cir. 2006).  Because "the prison official's duty is only to provide reasonable care," prison

officials are liable only if they fail "'to take reasonable measures' in response to a medical

condition."  Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious."

Salahuddin v. Goord, 467 F.3d at 280.  If the allegedly offending conduct "is a failure to provide

any treatment for an inmate's medical condition, courts examine whether the inmate's medical

condition is sufficiently serious." Id. If the offending conduct is the "medical treatment given,"

however, "the seriousness inquiry is narrower." Id. When "the prisoner is receiving appropriate

on-going treatment for his condition," and brings a "denial of medical care claim based on a

temporary delay or interruption in treatment," courts look to "the severity of the temporary

deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical

condition." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

With respect to the mens rea prong, "distinguishing between negligent and reckless

medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the

benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y.

June 28, 2018). Courts often look to the "degree of risk associated with the negligent treatment."

See id. (collecting cases).

Here, plaintiff's allegations are that he had a fractured left ankle and right fourth

metacarpal, and that defendants did not provide proper medical care. Specifically, he alleges

defendants failed to provide: (i) Percocet; (ii) surgery aftercare; and (iii) post-surgery housing

and care in the infirmary.

These allegations are inadequate to make out a deliberate indifference to serious medical

needs claim. Plaintiff's left ankle and right metacarpal fractures are insufficient to satisfy the

first prong—that plaintiff's injuries were objectively serious and defendants failed to provide

adequate care. Moreover, plaintiff's complaint alleges he received medical treatment for three

months while he was in the infirmary, had surgery on his right fourth metacarpal, and, despite a

determination that he was capable of bearing weight, he continued to have access to, and use, a

wheelchair. Further, plaintiff's contention about receiving Tylenol instead of a narcotic does not

give rise to a constitutional violation.

Specifically respecting defendant Gendell, plaintiff alleges Gendell treated plaintiff while he was in the infirmary, but he does not say what Gendell failed to do to treat his injuries. Plaintiff's primary assertion against Gendell is that she filed a false report saying he was not handicapped, and discharged him from the infirmary. Yet plaintiff fails to allege why Gendell should have classified him as handicapped because of his fractures, which are insufficient to constitute disability under federal law. See Morse v. City of New York, 2001 WL 968996, at *7 (S.D.N.Y. Aug. 24, 2001) (in the context of an ADA claim, "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs[.]").

Further, plaintiff does not allege what Comm'r Spano, Dep. Comm'r Diaz, or Warden DelGrosso did or did not do respecting his medical care. Thus, plaintiff fails to plead personal involvement of Spano, Diaz, or DelGrosso with regard to his deliberate indifference claim. See Ashcroft v. Iqbal, 556 U.S. at 676.

Accordingly, plaintiff's claim for deliberate indifference to serious medical needs must be dismissed.

B.    Conditions of Confinement

Defendants argue plaintiff fails to state a claim for conditions of confinement based on the conditions in the old jail at WCJ.

The Court agrees.

As discussed above, the Court evaluates plaintiff's claims under the standard for pretrial detainees. See Darnell v. Pineiro, 849 F.3d at 29. Accordingly, plaintiff's cruel and unusual conditions of confinement claim will be analyzed under the Fourteenth Amendment.

To plead the objective prong, a plaintiff must plausibly allege the challenged conditions, posed an unreasonable risk of serious damage to his health.  See Darnell v. Pineiro, 849 F.3d at 30.  Although "the Constitution does not mandate comfortable prisons, prisoners are entitled to basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety."  Randle v. Alexander, 960 F. Supp. 2d 457, 474–75 (S.D.N.Y. 2013).

To plead the mens rea prong, a pretrial detainee must plausibly allege the official acted "with the requisite deliberate indifference."  Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000).  Plaintiff can make such a claim by alleging the official knew and yet disregarded "an excessive risk to inmate health or safety."  Id.

Here, plaintiff's allegations fail to satisfy the objective prong of the deliberate indifference analysis.  Plaintiff's factual allegations to support this claim are:  (i) his cell in the old jail was covered in feces and smelled like urine; (ii) the housing unit air and was stagnant and hot and the floors and walls were broken or peeling; (iii) the showers in his housing unit were approximately three feet above ground and lacked floor mats, and therefore slippery; and (iv) the day room in the old jail lacked a bathroom and other facilities available in other housing units in WCJ.  None of these allegations constitutes a constitutional violation.  Indeed, plaintiff has failed to plausibly allege the conditions of his confinement posed an unreasonable risk of serious damage to plaintiff's health or safety, and the Court need not reach whether plaintiff's allegations satisfy the mens rea prong of the analysis.

Accordingly, plaintiff's cruel and unusual conditions of confinement claim must be dismissed.

VII.    Conspiracy Claims

Defendants argue plaintiff has failed to allege an actionable conspiracy arising under

Sections 1983 or 1985.

The Court agrees.

To state a conspiracy claim under Section 1983, a plaintiff must allege: "(1) an

agreement between [two or more state actors or] a state actor and a private party; (2) to act in

concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002).

Plaintiff must plead "defendants acted in a willful manner, culminating in an agreement,

understanding, or meeting of the minds, that violated [his] rights, privileges or immunities

secured by the Constitution or federal courts." Bussev v. Phillips, 419 F. Supp. 2d 569, 586–87

(S.D.N.Y. 2006). "[C]omplaints containing only conclusory, vague, or general allegations [of

conspiracy] . . . are properly dismissed; diffuse and expansive allegations are insufficient, unless

amplified by specific instances of misconduct." Ciambriello v. County of Nassau, 292 F.3d at

325.

"A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate

such right." Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). If a plaintiff

fails to show an underlying constitutional violation on which to base a Section 1983 conspiracy

claim, the conspiracy claim fails as a matter of law. See AK Tournament Play, Inc. v. Town of

Wallkill, 2011 WL 197216, at *3–4 (S.D.N.Y. Jan.19, 2011), aff'd, 444 F. App'x 475 (2d Cir.

2011). A conspiracy allegation alone is not sufficient. See Nealy v. Berger, 2009 WL 704804,

at *5 (E.D.N.Y. Mar. 16, 2009) ("The mere use of the term 'conspiracy' . . . is clearly

insufficient to satisfy Rule 12(b)(6) in connection with a Section 1983 conspiracy claim.").

Similarly, to state a conspiracy claim under Section 1985, a plaintiff must allege an underlying constitutional violation. A conspiracy claim under Section 1985 requires a plaintiff to allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Dolan v. Connolly, 794 F.3d at 296; see also 42 U.S.C. § 1985(3). The conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d at 791.

Here, plaintiff's conspiracy claims fail because, as discussed above, plaintiff has not alleged an underlying constitutional violation, save his retaliation claim against Warden DelGrosso and Sgt. Hogue and Sgt. Martinez. And with respect to plaintiff's retaliation claim, he fails to state any facts indicating DelGrosso engaged in a conspiracy with Hogue, Martinez, or non-party Sgt. Meade. The statement that plaintiff attributes to Martinez—"this is happening because you recently filed a lawsuit against him; that's why he's moving you" (Compl. at ECF 24)—does not suggest any understanding, agreement, or meeting of the minds between these individuals to support a conspiracy claim. Moreover, allegations of DelGrosso's retaliatory motive in terminating plaintiff from his job in the law library and transferring him to the old jail are insufficient to suggest the existence of a conspiracy. Absent allegations suggesting a conspiratorial understanding between DelGrosso, Meade, Hogue, and/or Martinez, plaintiff's Section 1983 claim fails. Plaintiff's Section 1985 claim fails too because the complaint lacks sufficient allegations suggesting a conspiracy existed, and that it was motivated by class-based animus.

Accordingly, plaintiff's Section 1983 and 1985 conspiracy claims must be dismissed.

VIII.    Monell Claims

The County and CCS argue plaintiff fails to state claims against them pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Court agrees.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, to assert a Section 1983 claim against the County or CCS, plaintiff must allege the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. See Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010). The requirement exists because, "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 403 (1997).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), . . . such claims nevertheless must meet the plausibility requirements of [Bell Atlantic Corp. v. Twombly, 550 U.S. at 572], and [Ashcroft v. Iqbal, 556 U.S. at 678]." Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). "In other words, boilerplate allegations will not suffice." Id. at *3. Thus, allegations that a defendant "acted pursuant to a policy, without any facts suggesting the policy's existence, are plainly insufficient." Missel v. County of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009) (summary order).

Here, plaintiff fails plausibly to suggest the existence of a CCS or County policy or custom that caused injury, and a direct causal connection between such policy or custom and the deprivation of plaintiff's constitutional rights.

Plaintiff makes a number of allegations to support his Monell claim. First, he claims CCS and the County had a policy or custom of inadequately training, supervising, and disciplining correctional officers. This allegation is entirely conclusory.

Second, plaintiff alleges the County and CCS had policies or customs that allowed for wrongful confinement, improper housing, and retaliation. Specifically, plaintiff argues the County uses the old jail as punitive housing. However, this claim does not amount to a constitutional deprivation and is conclusory. See Walker v. City of New York, 2012 WL 3037308, at *2 (S.D.N.Y. July 25, 2012) ("[P]rison officials have full discretion to control conditions of confinement, which include prisoner classification, and prisoners have no legitimate statutory or constitutional entitlement sufficient to invoke due process in connection with such conditions.").

Third, plaintiff alleges CCS and the County had a policy or custom to discourage grievances. Once again, this allegation is conclusory. Plaintiff has not alleged a policy or custom that actually discourages the filing of grievances.

Fourth, plaintiff alleges CCS and the County have policies or customs which constitute deliberate indifference. Under a liberal reading of the complaint and plaintiff's briefing, it appears plaintiff's argument is CCS should have, but refused to prescribe him Percocet. (See Compl. at ECF 23). However, such an allegation does not suggest a policy or custom giving rise to a Monell claim. And in any event, mere disagreement over an individual course of treatment does not give rise to a constitutional claim. Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.").

Finally, plaintiff's other Section 1983 claims against the County—for wrongful confinement, deliberate indifference to serious medical needs, and cruel and unusual confinement—fail as well because Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989). Plaintiff's Section 1983 deliberate indifference to serious medical needs claim against CCS fails for the same reasons the claims against the County fail.

Accordingly, plaintiff's Monell claims against the CCS and the County are dismissed.

IX.    ADA Claim

The County and CCS argue plaintiff fails to state a claim under the ADA for lack of accommodations relating to his ankle and right fourth metacarpal fractures.

The Court agrees.

To state a claim under the ADA, a plaintiff must allege he "is disabled as defined by the statute and that a person who operates a place of public accommodation discriminated against her on the basis of her disability." Morse v. City of New York, 2001 WL 968996, at *7 (S.D.N.Y. Aug. 24, 2001). However, "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." Id. Such impairments may include broken or fractured limbs. Id.

Here, plaintiff claims his fractured ankle and metacarpal constitute a disability under the ADA, and therefore, the County and CCS violated "the ADA by: (1) failing to equip the showers in 1-East with benches and rails to assist handicap[ped] prisoners; and (2) failing to maintain ramps in the [old jail] prisoner yards, so that Plaintiff and other handicap[ped] inmates can engage in recreation." (Compl. at ECF 36–37).

Plaintiff's failure to plead even a formulaic recitation of an ADA claim's elements, let alone facts sufficient to establish each element, requires dismissal of his ADA claim. See Gershanow v. County of Rockland, 2014 WL 1099821 at *5 (S.D.N.Y. Mar. 20, 2014). Moreover, broken bones usually are not considered disabilities. Morse v. City of New York, 2001 WL 968996, at *7.

Because plaintiff has not indicated why he believes his fractures should be treated differently, the Court finds plaintiff's fractures are not disabilities under the ADA, and dismisses the ADA claim against CCS and the County.

## CONCLUSION

The CCS Defendants' motion is GRANTED.  The County Defendants' motion is GRANTED IN PART and DENIED IN PART.

Plaintiff's remaining claim is a Section 1983 First Amendment claim for retaliation against defendants Warden DelGrosso, Sgt. Hogue, and Sgt. Martinez.

Defendants DelGrosso, Hogue, and Martinez shall file an answer by February 24, 2020.

The Clerk is instructed to terminate defendants Westchester County, Warden La Fonda Spaulding, Captain Christopher Roberts, Correctional Officer Chestnut, Correctional Officer Luis, Correctional Officer Grant, Commissioner Joseph K. Spano, Deputy Commissioner Leandro Diaz; Correct Care Solutions, LLC, and M.D. Alexis Gendell.

The Clerk is further instructed to terminate the motions.  (Docs. ##25, 34).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: February 10, 2020
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge